IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MEMBER SERVICES, INC., *et al.*,

                    Plaintiffs,

                                              Civ. Action No.
          vs.                                 3:06-CV-1164 (TJM/DEP)

SECURITY MUTUAL LIFE INSURANCE,
 *et al.*,

                    Defendants.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFFS:

BENJAMIN LAW FIRM                   RONALD R. BENJAMIN, ESQ.
P.O. Box 607
126 Riverside Drive
Binghamton, NY 13902-0607

FOR DEFENDANTS:

HINMAN, HOWARD LAW FIRM             ALBERT J. MILLUS, JR., ESQ.
P.O. Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902-5250

HURWITZ, SAGARIN LAW FIRM           DAVID A. SLOSSBERG, ESQ.
147 North Broad Street
Milford, CT 06460

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER

Currently pending before the court in connection with this action is a discovery dispute centered around plaintiffs' claim of entitlement to discovery, in electronic format, of information which has already been provided in paper form.  Armed with opinion testimony from an expert which they have retained concerning the time and effort which would be required to convert the materials produced by the defendants into a useable form and the potential pitfalls associated with that exercise, and based upon their allegation of relevance of the materials sought to the claims and defenses in this case, plaintiffs request that the court revisit an earlier determination not to require the requested disclosure in digital format.  Defendants counter by asserting that compliance with the plaintiffs' request would entail at least some measure of burden on their part, and additionally argue that the information sought is highly proprietary and confidential and that to require them to produce it in electronic format, despite the fact that it has already been made available to the plaintiffs in hard copy, would expose them to the risk that their highly proprietary information could be misappropriated by the plaintiffs or fall into the hands of competitors.[1]

---

[1]    While the defendants initially argued, as one of the bases for resisting the requested discovery, that it would be unduly burdensome to produce the information

2

Having considered the positions of the parties and testimony

adduced during an evidentiary hearing conducted on September 26, 2007,

I find that plaintiffs have carried their burden of demonstrating both the

relevance of the materials sought and the need for the requested

discovery, and further that defendants have failed to sustain their heavy

burden of showing grounds for the entry of a protective order shielding

them from the requirement of producing the otherwise relevant data.

I.      BACKGROUND

This action arises out of a failed business relationship between the

plaintiffs and defendant Security Mutual Life Insurance Company of New

York ("SML") and its wholly owned subsidiary, Archway Technology

Services, Inc. ("Archway").  The parties' venture involved the sale of

various insurance products, utilizing as a base of potential consumers the

memberships of several credit unions.

According to plaintiffs' complaint, Member Services, Inc. ("MSI") has

been engaged in selling insurance products through various credit union

partners since 1985.  In order to assist in that endeavor, plaintiffs allege

---

sought, they have since softened their position in this regard.  While the defendants'
witness at the hearing, Scott Sylvester, an Assistant Vice President with defendant
Security Mutual Life Insurance, testified that the requested production would entail
work that would take "more than five minutes" he did not affix any specific estimate as
to the time and effort that would be required, nor was he asked to do so by his counsel.
Based upon his testimony, however, it is the court's perception that to produce the
requested information in digital format will be a relatively burden-free exercise.

that in 1995 they created a computer software program known as "CU @ Work", enabling MSI agents to facilitate the sale of insurance products to existing and new credit union members and orchestrating payroll deduction and/or direct deposit payments associated with those packages. Through CU @ Work, MSI agents are able to generate paperwork, utilizing laptop computers, at employers' worksites to enroll employees in the various sponsored programs. According to MSI, at the relevant times it has had ongoing relationships with Piedmont Aviation Credit Union ("PACU") as well as with several large scale employers including Lowe's Home Improvement Warehouse and CARQUEST Auto Parts.

In late 2002, representatives of MSI and SML began to consider a joint business relationship for the purpose of offering SML's life insurance products in New York as part of the MSI package. Representatives of the two companies met in January of 2003 in MSI's offices in North Carolina to discuss the possibility of such a venture. During that meeting, according to plaintiffs, MSI representatives provided a demonstration of its then-existing version of CU @ Work as well as a new ".asp" electronic version of that program. In furtherance of the venture, the parties executed a letter of intent dated January 21, 2003 detailing the proposed endeavor.

The parties' venture failed shortly after its inception.  According to the plaintiffs, SML thereafter misappropriated its CU @ Work source code and the business model upon which it was predicated and, with the assistance of co-defendant Schmitt-Sussman Enterprises, Inc., ("SSE"), began to compete with MSI, utilizing a new version of SML's "LifeGuard" program containing functionalities similar to those of CU @ Work but not found in earlier versions of LifeGuard or its parent program, ActivEnroller. Plaintiffs allege that during the course of planning the joint venture SML pirated their protected, proprietary information and utilized it to develop and improve its programs.

II.     <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on September 29, 2006.  Dkt. No. 1. As defendants, plaintiff has named SML, Archway, SSE and five individuals affiliated with SML.  Plaintiff's complaint asserts a variety of claims,  including 1) copyright infringement, in violation of the Copyright Act, Title 17 U.S.C. § 504 *et seq.*; 2) trademark dilution, in violation of 15 U.S.C. § 1125(c); 3) false designation of origin, in violation of 15 U.S.C. § 1125(a); 4) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; 5) breach of fiduciary duty; 6) breach of contract and of the covenant of good faith and

fair dealing, and unjust enrichment; 7) tortious interference with business relationships and prospects; 8) unfair and/or deceptive practices, in violation of N.Y. Gen. Stat. § 75.1.1 *et seq.* and N.Y. General Business Law § 349; 9) violation of N.Y. General Business Law § 360(1); 10) unfair competition; 11) constructive trust; and 12) fraudulent misrepresentation, against all or, in some cases, some of the defendants named in the complaint.  Issue has since been joined by the SML defendants' filing on November 18, 2006 of an answer in which they deny plaintiffs' allegations and assert counterclaims against the plaintiffs,[2] *see* Dkt. No. 6, and a case management order has been issued by the court establishing various deadlines requiring, *inter alia*, completion of fact discovery by October 1, 2007, the completion of all discovery by December 1, 2007, the filing of dispositive motions by February 1, 2008, and establishing a trial ready date of June 1, 2008.  Dkt. No. 15.

Since its inception this action has proven contentious, requiring court intervention at several stages.  One lingering issue which has pervaded the action arises from plaintiffs' efforts to obtain from SML its proprietary information related to its LifeGuard program, including a history of its

---

[2]      A separate answer on behalf of defendant SSE was filed on December 4, 2006.  Dkt. No. 11.  Unlike that filed on behalf of the SML defendants, the answer lodged by SSE contains no counterclaims.  *Id.*

development and revision, in order to permit comparison to plaintiffs'

allegedly pirated information and software.  A consistent theme of the SML

defendants' various presentations in connection with that issue has been

their contention that plaintiffs' claims are spurious, and they should

therefore be required to adduce proof establishing a *prima facie* claim of

misappropriation and copying before being required to divulge their highly

confidential proprietary information during the course of pretrial discovery,

thereby risking its dissemination or the possibility that, armed with SML's

code, plaintiffs could doctor theirs to fabricate evidence of copying.

Believing that such an approach would resolve this vigorously

debated issue in a manner which was fair to both parties, I issued an order

on March 12, 2007 in which I directed the simultaneous submission by the

parties of the disputed materials related to their respective software

programs, directly to the court, in duplicate.  Dkt. No. 27.  Under the order,

that submission was to be followed by a simultaneous release of the

materials produced to opposing parties, once a suitable protective order

had been issued, in order to eliminate any claim of later fabrication by MSI

for the purpose of substantiating its claim of copying.  *Id.*  In compliance

with that directive, MSI made its submission in electronic format of the

materials which, it contends, were shared with SML during the course of

7

the parties' aborted business venture.  SML, by contrast, has submitted

the source codes for its ActivEnroller program in hard copy, without any

digital backup.[3]

Following the issuance of that order, plaintiffs filed a motion to

compel discovery in which, *inter alia*, they renewed their request to obtain

the sought-after programs in electronic format.  Dkt. No. 36.  That

application, which was opposed by the SML defendants, resulted in my

issuance of an order on May 21, 2007 in which, among other things, I

denied plaintiffs' request without prejudice to their right to reapply for that

relief in the future, upon a proper showing.  Dkt. No. 44.

On September 17, 2007, plaintiffs renewed their effort to obtain

discovery of the SML source codes in electronic format.  Dkt. No. 61.  That

application was supported by an affidavit from plaintiffs' counsel as well as

a separate affidavit from Steaphan Greene, an individual retained by the

plaintiffs to serve as a computer expert in the case, outlining the effort

which would be required in order to convert the source code produced in

written form to a useable, electronic format for purposes of comparison.

Defendants have since offered multiple submissions in opposition to that

---

[3]     Efforts by the SML defendants to obtain an order which would have
prohibited the plaintiffs from converting their hard copy submission into electronic
format were rejected by me.  *See* Order dated May 21, 2007 (Dkt. No. 44) ¶ 4.

application.  *See* Dkt. Nos. 64, 65.

An evidentiary hearing was conducted by me on September 26, 2007 to address plaintiffs' request and to flesh out certain factual issues implicated by the request.  At the close of that hearing, decision on plaintiffs' motion was reserved.

III.   DISCUSSION

The boundaries of permissive discovery in a federal action, though appreciably diminished by virtue of changes implemented in December of 2000, remain broad; by rule "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).  It is well-established that the rules pertaining to discovery, including its permissible scope, are to be broadly interpreted.  *See Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 128 (N.D.N.Y. 1984).  "'[D]iscovery is to be considered relevant where there is *any possibility* that the information sought may be relevant to the subject matter of the action.'"  *Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D.N.Y. 1997) (quoting *United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y 1974)) (emphasis in original).  Additionally, "[g]eneral and conclusory objections as to

9

relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *See Melendez v. Greiner,* No. 01 Civ. 07888, 2003 WL 22434101, at *1 (S.D.N.Y Oct. 23, 2003).

When a party seeks to compel discovery, it is that party which bears the initial burden of demonstrating relevance of the requested materials to a claim or defense in the case. *See Zanowic v. Reno*, No. 97 Civ. 5292, 2000 WL 1376251, at *5 (S.D.N.Y. Sept. 25, 2000).  This notwithstanding, courts place a strict burden on a party resisting discovery, as "[a]n objection to a document request must clearly set forth the specifics of the objection and how that objection relates to the documents being demanded." *Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 295 (W.D.N.Y. 1996) (internal citations omitted).  "'The burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the discovery rules found in the Federal Rules of Civil Procedure.'" *See Murray v. Palmer*, No. 03-CV-1010, 2006 WL 2516485, at *1 (N.D.N.Y. Aug. 29, 2006) (quoting *Obiajulu*, 166 F.R.D. at 295).

The rules which govern discovery also provide that despite a showing of relevance, a court may nonetheless issue a protective order precluding or limiting discovery, upon a proper showing.  Fed. R. Civ. P.

26(c); *see Costa v. AFGO Mech. Servs., Inc.*, 137 F.R.D. 21, 26 (E.D.N.Y. 2006).  The burden of establishing entitlement to such a protection rests with the party seeking to invoke the court's powers to shield, preclude or limit what would otherwise be the discovery of relevant information. *See Penn Group, LLC v. Slater*, 2007 WL 2020099, at *13 (S.D.N.Y. June 13, 2007) (noting that as the "proponent of a protective order", the movant bears the burden to demonstrate good cause for its proposed limitations on discovery); *see also Costa*, 237 F.R.D. at 26.

Throughout the course of this matter I have consistently rejected the SML defendants' argument that the court should engraft a limitation into the rules circumscribing allowable discovery by requiring that to qualify for discovery a plaintiff must first establish to the court's satisfaction a *prima facie* showing that it will ultimately prevail on its claims.  The governing rules set forth no such requirement, and for good reason.  As this case well illustrates, very often a party who has in good faith, consistent with the requirements of Rule 11 of the Federal Rules of Civil Procedure, asserted a claim against another party, may nonetheless be unable to establish liability, or even a *prima facie* case, absent access to potentially highly relevant information which is uniquely within the possession or control of an opponent.  While the SML defendants firmly believe that at

11

the end of the day they will prevail and successfully defeat plaintiffs' claims – and the evidence adduced at the recent evidentiary hearing is certainly suggestive of this end result – the court nonetheless believes that the plaintiffs should be given every reasonable opportunity to engage in discovery and uncover any available evidence to support their claims. Pivotal to our system of justice is the importance of liberal discovery, since "[o]pen discovery is the norm.  Gamesmanship with information is discouraged and surprises are abhorred.  Adherence to these principles assists the trier of fact and serves efficiency in the adjudication of disputes."  *Costa*, 237 F.R.D. at 26 (citations and quotations omitted).

In support of their position the SML defendants place strong reliance upon *SCO Group, Inc. v. Int'l Bus. Mach. Corp.*, No. 03 CV 00294, Dkt. No. 65-2 (D. Utah June 28, 2006) (Wells, M.J.), *adopted*, Dkt. No. 65-3 (D. Utah Nov. 29, 2006) (Kimball, D.J.), a case which, they assert, presented comparable circumstances.  Upon careful review of that decision, however, I find it difficult to draw a parallel between the two cases, based largely upon their respective procedural postures and distinct factual differences.  When it comes to discovery, each case generally must be determined upon its unique facts and circumstances.  It is readily apparent that in that case, considerable litigation history had preceded the date of

12

the cited opinion, and there already had been a considerable exchange of discovery, including with regard to the source codes at issue, prior to the time of the court's decision, thus readily distinguishing it from the circumstances now provided.  I note, parenthetically, to the extent that *SCO Group, Inc.* may suggest the existence of a requirement that in every case a plaintiff must prove a *prima facie* case before obtaining discovery, while I do not disagree that a court may possess the inherent discretion to require such a showing in an appropriate case, I reject that position as a general proposition, and reiterate my belief that the rules do not invoke such a requirement for a court to order entitlement to discovery.

In *SCO Group, Inc.,* the court also resorted to use of an analogy which I do not find at all apt in this case.  To paraphrase that decision, the court queried whether it would be appropriate, in the case of a person accused of shoplifting, for a law enforcement officer to refuse to disclose to the accused the item allegedly stolen, instead stating to the effect, "you know what you stole [and] I'm not telling."  *SCO Group, Inc.*, Dkt. No. 65-2 at 34.  In this case plaintiffs are alleging that they provided SML with access to MSI's CU @ Work program, with its various allegedly–unique functionalities and characteristics, and that the SML defendants thereafter stole from them concepts and source codes, and now request the

13

opportunity to inspect the SML defendants' products, presented in a format which would permit a meaningful comparison and elicitation of an expert opinion regarding whether or not copying has occurred, and to avoid the time and effort and proneness to error which, plaintiffs' expert testified, could result from the requirement of converting the ActivEnroller code from hard copy to electronic format.  I find this request to be eminently reasonable.

In this instance a protective order has been entered by the court pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, governing the exchange of confidential, proprietary information in the case.  *See* Dkt. No. 47.  Moreover, as was previously indicated, at the direction of the court the SML defendants have already supplied the requested information regarding the ActivEnroller program, readily acknowledging that with sufficient resources the plaintiffs could reformat that information into a useable, electronic form and, if they so desired, misuse it to SML's competitive disadvantage.  Under these circumstances it is difficult to discern any appreciable prejudice to the SML defendants in the event that the plaintiffs' application is granted, subject to stringent requirements including the protective order in place and the agreement by the designated expert that he not share the information with others, including

14

the plaintiffs.

IV.   <u>SUMMARY AND ORDER</u>

Despite what the SML defendants may believe regarding the weaknesses of plaintiffs' claims and the strength of their defenses, plaintiffs have established to my satisfaction that the information now sought is highly relevant to their claims.  Conversely, the SML defendants have failed to sustain their heavy burden of demonstrating the basis for a need to protect them against the requested disclosure of the requested information.  Since the SML defendants have already been exposed to the dangers associated with disclosure by virtue of their production of the source code in hard copy, from which they readily acknowledge with enough effort and resources a party could reverse engineer the product, if desired, and transmit their highly confidential proprietary information to other parties, the SML defendants will suffer no discernable prejudice should the plaintiffs' request be granted, particularly if made subject to the Rule 26(c) protective order already in place and additionally to conditions which would adequately protect the integrity of their product.

It is therefore hereby

ORDERED as follows:

1)      Plaintiffs' motion to compel discovery (Dkt. No. 61) is

GRANTED, subject to the following conditions, and to the limited extent that my prior order dated May 21, 2007 (Dkt. No. 44) provides otherwise, that portion of my order is hereby VACATED.

2)      Within ten (10) business days of the date of this order, the SML defendants shall produce directly to the plaintiffs' expert, in electronic format, the source code and other digital information associated with defendants' ActivEnroller and LifeGuard programs.

3)      The disclosure required in this order is specifically conditioned upon the execution by plaintiffs' expert, Steaphan Greene, of an acknowledgment that the disclosure is subject to the protective order issued in this case and his agreement not to disclose the electronic versions of ActivEnroller and LifeGuard, and any other information digitally transmitted by the SML defendants to him, to any other party except staff working directly with him in connection with this expert retention, and specifically not to disclose those materials to the plaintiffs or their counsel.

4)      Prior to his receipt of the required disclosure, plaintiffs' counsel shall supply to the expert a copy of this order and shall obtain his signature on an agreement to be bound by its terms as well as the terms of the confidentiality order in place in this case, and shall provide defendants' counsel with a copy of that statement.

5)     While the transmission of the digitally formatted source code and other information requested in this order may be made through a format which is encrypted, the SML defendants shall provide the expert with the necessary password and other encryption codes necessary in order to decipher and utilize the information for purposes of his comparison analysis of the transmitted materials.

6)     No costs or attorneys' fees are awarded to any party in connection with the pending dispute.

7)     The clerk is directly to promptly forward copies of this order to parties in accordance with this court's local rules.


Dated:     October 3, 2007
           Syracuse, NY



_____
David E. Peebles
U.S. Magistrate Judge

17