UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MEMBER SERVICES, INC.,
ROGER D. BANKS, and R. AARON BANKS,

                          **Plaintiffs,**

    vs.                                      3:06-cv-1164
                                                  (TJM/DEP)

SECURITY MUTUAL LIFE INSURANCE
COMPANY OF NEW YORK, a New York Corporation,
ARCHWAY TECHNOLOGY SERVICES, INC.,
a New York Corporation, SCHMITT-SUSSMAN
ENTERPRISES, INC., a Delaware Corporation,

                          **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

The parties have briefed certain issues they contend need to be resolved prior to the commencement of the trial in this case. A significant point of contention between the parties concerns the admissibility of the Select Employer Group Software ("SEGSoft"). The basis for the dispute is set forth in Magistrate Judge Peebles' November 12, 2010 Report, familiarity with which is presumed. In short, Plaintiffs commenced this action in 2006. The general basis of the complaint is that Defendants misappropriated Plaintiffs' intellectual property (computer code). In March 2007, Magistrate Judge Peebles issued an order requiring Plaintiffs to submit to the court, among other things, all computer code

1

they claim was conveyed to Defendants in or about 2003 in connection with the proposed joint venture.  As part of that Order, Plaintiffs were to certify that they "produced all materials that, [they] will contend at trial, were conveyed to the defendants during the relevant meetings in or about early 2003."[1]

Pursuant to Magistrate Judge Peebles' Order, in April 2007, Plaintiffs submitted various materials along with the required certification.  Absent from Plaintiffs' materials was the SEGSogft program.

In May 2008, Plaintiffs were represented by new counsel.  At that time, with the consent of the parties, Plaintiffs filed an amended complaint.  The Amended Complaint mentioned, for the first time, the SEGSoft program and that the SEGSoft program was among the computer code disclosed to Defendants.  Shortly thereafter, Plaintiffs disclosed the SEGSoft source code and then sought permission to amend the aforementioned certification to include those portions of the SEGSoft program that had been incorporated into the memberservicesinc.com web portal.

Magistrate Judge Peebles denied the request for leave to amend the certification "without prejudice to plaintiffs' right to request that the trial court permit them to offer evidence at trial suggesting that despite the certification, other materials were made available to the SML defendants by plaintiffs and were subsequently copied and/or misappropriated by them."  The issue of whether evidence concerning the SEGSoft program may be admitted into evidence is now before the Court.

Defendants contend that Plaintiffs should be precluded from offering any evidence

---

[1] One of the primary purposes of this procedure was to alleviate concerns that Plaintiffs would fabricate any claims after they received Defendants' disclosures.

2

as to materials that were not certified in accordance with Magistrate Judge Peebles' Order. They argue that allowing the SEGSoft program into evidence goes against the very purpose of Judge Peebles's certification process, Plaintiffs fail to point to the actual materials they claim was disclosed to Defendants as part of the www.memberservicesinc.com web portal, and there is no factual support for the contention that the materials were made available to Defendants.

Plaintiffs, on the other hand, contend that the evidence should be admissible because: the omission of the SEGSoft software from the certification was due to the oversight of prior counsel, Ronald Benjamin; the existence of the software and its functionality and relevance to this case has been known to Defendants since 2008 and was the subject of some discovery; the SEGSoft materials were produced to Defendants before their expert issued a report and was deposed; and the materials were disclosed well before the close of discovery.

Upon consideration of the parties' arguments, the Court finds insufficient grounds to warrant a complete bar to the admission of the SEGSoft materials. As Judge Peebles noted, there were two purposes for his order: (1) to provide a mechanism whereby Plaintiff could not fabricate evidence of what it revealed to Defendants after reviewing Defendants' discovery disclosures; and (2) to frame the issues in this case. Judge Peebles found that Defendant "does not possess evidence which would support a credible claim that the SEGSoft program was created after the fact. . . ." Indeed, in filing the instant motion papers, Defendants have submitted insufficient evidence suggesting that Plaintiffs have fabricated evidence. There being no genuine concerns that Plaintiffs fabricated evidence, the first purpose of Judge Peebles' certification order has been fulfilled, even though

Plaintiffs included the materials after the date set by Judge Peebles. Accordingly, this does not provide a basis for preclusion. Moreover, given the fact that Defendants were aware that the SEGSoft materials were at issue in this case since 2008 when discovery was not complete, its expert had not yet prepared his report, and expert depositions had not been completed, the Court similarly finds that the second purpose of the certification order has been fulfilled and does not provide a basis for preclusion.[2]

Defendants next move to preclude Plaintiffs from obtaining damages based on royalties from the sale of insurance contracts. According to Defendants, because the SEGSOFT software is not related to the product Plaintiffs or Defendants sells (insurance policies), damages may not be awarded based on a percentage of Defendants' profits. Defendants contend that any damages should be limited to the fair market value of what may have been misappropriated. Plaintiffs concede that their software does not directly induce retail customers to purchase insurance products. Pl. Mem. of Law at 6. Plaintiffs argue, however, that:

> availability of a fully automated and uniquely efficient system to deliver multiple insurance products on a high-volume basis through large employer (SEG) relationships will be likely to induce a greater number of those parties to make the products available to their employees as a low-cost employee benefit. This is because, with full automation, an employee benefits program can be processed inexpensively and efficiently with minimized manual administration at the payroll offices, and in credit union offices. . . . Member Services *does* claim that this is one of the primary competitive advantages offered by its [software]. Member Services intends to prove at trial that the ability to promote the efficiency of this process to credit unions and large employer groups has enabled Security Mutual and its

---

[2] The Court is finding that the SEGSoft materials should not be precluded for failing to comply with the certification order. If there are other grounds for precluding this evidence, Defendants may raise them at trial. Defendants' continuing claim that Plaintiff has created a legal theory after looking at Defendants' software is something they can pursue through cross-examination.

4

>agents to service this "niche" market far more effectively than its competitors, to expand its presence in that market and to earn substantial premium income.

Pl. Mem. of Law at 6.

Plaintiffs do not seek an award of Defendants' entire profits, but "a royalty award that Member Services and Security Mutual would have agreed upon in a hypothetical royalty negotiation." Id. at 18.  Distilled to the basics, Plaintiffs are claiming that the use of their software enabled Defendants to compete more efficiently than other companies.  There is no claim that Defendants disclosed the software to others or that Plaintiffs have been precluded from also using the software.

"Although calculation of the amount of damages is a factual determination, the formula used in making that calculation is a question of law." Vermont Microsystems, Inc. v. Autodesk, Inc., 138 F.3d 449, 452 (2d Cir. 1998).  "The amount of damages recoverable in an action for misappropriation of trade secrets may be measured either by the plaintiff's losses . . . or by the profits unjustly received by the defendant." A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991).  "Plaintiff's losses may include the cost of developing the trade secret and the revenue plaintiff would have made but for the defendant's wrongful conduct." LinkCo, Inc. v. Fujitsu Ltd., 232 F. Supp.2d 182, 185 (S.D.N.Y. 2002).  "Unjust enrichment is measured by the profits the defendant obtained from using the trade secret." Id.  "[A] victim of misappropriation may recover for both his actual loss and the wrongdoer's unjust enrichment but only to the extent that the latter is not taken into account in computing the former." Vermont Microsystems, 138 F.3d at 452. Where the defendant's gain or the plaintiff's loss is difficult to calculate, "[r]easonable royalty is a common form of award in . . . trade secret . . . cases." Vermont Microsystems,

5

Inc. v. Autodesk, Inc., 138 F.3d 449, 450 (2d Cir. 1998).

Comment (f) to section 45 of the Restatement of the Law on Unfair Competition notes that:

> If the trade secret accounts for only a portion of the profits earned on the defendant's sales, such as when the trade secret relates to a single component of a product marketable without the secret, an award to the plaintiff of defendant's entire profit may be unjust.  The royalty that the plaintiff and defendant would have agreed to for the use of the trade secret made by the defendant may be one measure of the approximate portion of the defendant's profits attributable to the use.

"A reasonable royalty award attempts to measure a hypothetically agreed value of what the defendant wrongfully obtained from the plaintiff.  By means of a 'suppositious meeting' between the parties, the court calculates what the parties would have agreed to as a fair licensing price at the time that the misappropriation occurred." Vermont Microsystems, Inc., 88 F.3d at 151.  "In fashioning a reasonable royalty, 'most courts adjust the measure of damages to accord with the commercial setting of the injury, the likely future consequences of the misappropriation, and the nature and extent of the use the defendant put the trade secret to after misappropriation." Vermont Microsystems, 88 F.3d at 151 (quoting University Computing Co. v. Lykes-Youngstown Corp., 504 F.2d 518, 538 (5th Cir. 1974)).

> [T]he trier of fact should consider such factors as the resulting and foreseeable changes in the parties' competitive posture; the prices past purchasers or licensees may have paid; the total value of the secret to the plaintiff, including the plaintiff's development costs and the importance of the secret to the plaintiff's business; the nature and extent of the use the defendant intended for the secret; and finally whatever other unique factors in the particular case which might have affected the parties' agreement, such as the ready availability of alternative processes.

Id; see also University Computing Co. v. Lykes-Youngstown Corp., 504 F.2d 518, 538 (5th Cir. 1974).

The Court finds that, under the facts and circumstances of this case, neither the "plaintiff's losses" nor the "unjust enrichment" methodologies are the appropriate measure of damages. It is difficult to ascertain direct losses to Plaintiffs or direct gains to Security Mutual as a result of the use of the software. Thus, the reasonable royalty method should be used. That is not to say that damages should be based on a percentage of Security Mutual's sales. The trier of fact should calculate, as close as possible, what the parties would have agreed to as a fair licensing price at the time that the misappropriation occurred. This may be based on a flat rate, a percentage of sales, or an hourly basis related to the amount of time spent developing the software.

This leads us to the final basis of the pending motions - Defendants' motion to preclude the testimony of Plaintiffs' damages expert, Michael Krieger. The Court finds that Krieger's experience enables him to testify as to the type of financial arrangements that are typically used in software cases. Subject to a proffer at trial, Krieger may even be qualified to opine as to the type of situations where a certain pricing scheme is used or the considerations that go into determining price under the various models. However, the Court agrees with Defendants that Krieger's opinions concerning the pricing amount the parties likely would have agreed to in this case are insufficiently reliable and based on an inadequate foundation. Among other problems with his opinion:

- Krieger states that his figures are based on "were I [Plaintiffs'] attorney at the time, what advice would I have given and what would I have negotiated on MSI's behalf." As the Second Circuit stated in <u>Vermont Microsystems</u>, neither "the opening gambit" in negotiations nor what Plaintiff would have charged is the proper amount. 88 F.3d at 152;

7

- Upon review of Krieger's report and deposition, it does not appear that he relied on similar licensing agreements (i.e. licenses with a relationship to the software at issue here or of a similar subject matter) in determining his royalty range of 5-10%. Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292 (Fed. Cir. 2011); see also ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 870 (Fed. Cir. 2010); Lucent Technologies, Inc. v. Gateway, Inc., 580 F.3d 1301, 1327 (Fed. Cir. 2009); and Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc., 609 F.3d 1308 (Fed. Cir. 2010);

- his analysis does not take into consideration the actual functionality of the subject software or how it contributed to Security Mutual's operations or whether it helped improve sales;

- his conclusion that a 5-10% royalty rate is reasonable because it is in the range of other software licenses contradicts his assertion that "the two key facets of the software world [are that] (1) software-related transactions lack standard models; and correspondingly, (2) each deal must be analyzed on its own, i.e., is fact dependent;"

- he concludes that royalties for the use of the software should be based on insurance premiums because that is how agents are paid.  Krieger Report at 6. This conclusion fails take to take into consideration the degree to which the software increased sales (which is what agents are supposed to do) rather than simply render the process more efficient and the fact that this software may be appreciably different from other matters in which Security Mutual has paid for matters based on a percentage of premiums;

- his conclusion is based, in part, on the assumptions that "MSI would have no control over the pricing SML might arrange with other insurance companies or agencies," id. at 8, and that Security Mutual could modify and enhance the software.  However, Krieger does not point to anything suggesting that Security Mutual transferred any of the subject technology or modified and/or enhanced the software for use with other agencies or carriers;

- his conclusion also is based, in part, on the assumption that Security Mutual has exclusive use of the software.  Id.  Of course, Plaintiff remains free to sell or license out its software; and

- his conclusions are based, in part, on "[a] number of confidential conversations with knowledgeable people in and out of the insurance industry. . . ."  Krieger provides nothing concerning the identity or reliability of these confidential informants to assist the Court in ensuring that his opinions are based on a reliable foundation.

Accordingly, the expert will be precluded from testifying concerning the pricing amount to which the parties likely would have agreed.

For the foregoing reasons, Defendants' motion to preclude evidence concerning the SEGSOFT software [Dkt. No. 316] is DENIED; the motion to preclude the testimony of Michael Krieger [Dkt. No. 316) is GRANTED IN PART; the motion to preclude Plaintiffs from obtaining damages based on royalties from the sale of insurance contracts is DENIED; and Plaintiffs' motion to permit the introduction of the SEGSOFT software and

9

the testimony of Michal Elliott is GRANTED IN PART.[3]  In all other respects, the parties motions are DENIED with leave to renew at trial.[4,5]  Neither party shall be entitled to costs or fees incurred in connection with these motions.

**IT IS SO ORDERED**

DATED: May 26, 2011

_____
Thomas J. McAvoy
Senior, U.S. District Judge

---

[3] To be clear, the Court is not ruling that the SEGSOFT software or Mr. Elliott's testimony is necessarily is admissible, but only that they will not be precluded for failing to comply with Magistrate Judge Peebles' certification order.

[4] This is not the granting of a license to reargue matters that have already been decided.  The parties remain free to raise new objections to the admission of evidence at trial.

[5] Because Plaintiff did not have an opportunity to respond to the issue concerning whether only ten files may form the basis of its appropriation claim, the Court is not now ruling on that issue.  The parties may raise this issue in a conference immediately before the start of trial.